## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JUDICIAL WATCH, INC.,** | |
| Plaintiff, | |
| v. | Case No. 20-cv-124 (CRC) |
| **U.S. DEPARTMENT OF STATE**, | |
| Defendant. | |

## MEMORANDUM OPINION

In this Freedom of Information Act ("FOIA") case, Plaintiff Judicial Watch, Inc. seeks records pertaining to the U.S. Department of State's use of CrowdTangle, a social media analytics program capable of tracking users' activity across multiple platforms. Judicial Watch believes that the State Department may have misused CrowdTangle to track the social media activity of U.S.-based journalists in 2019. The State Department has released some documents to Judicial Watch but partially withheld others, relying primarily on the deliberative process privilege. Both sides now seek summary judgment regarding the propriety of those withholdings.

After reviewing the record, the Court is persuaded that all of the disputed withholdings were proper. The State Department has demonstrated that the information in question falls within the deliberative process privilege and that releasing it would cause foreseeable harm. The agency is therefore entitled to summary judgment.

## I.     Background

Judicial Watch is a non-profit organization that "regularly requests records from federal agencies pursuant to FOIA" and disseminates information from those records. Compl. ¶ 3. In 2019, Judicial Watch began investigating an allegation that employees of the U.S. Embassy in

Kyiv, Ukraine were using CrowdTangle to monitor social media activity by several American journalists and by Donald Trump, Jr.  Pl. Mem. Opp'n to Def. Mot. Summ. J. ("Pl. Opp'n") at 1, ECF No. 16.  According to Judicial Watch, this "surveillance began in the Spring of 2019 in response to an investigation by U.S. journalists into President Joe Biden's son, Hunter Biden, who was employed by the Ukrainian based company Burisma Holdings from April 2014 until April 2019."  Id.

To learn more about this matter, Judicial Watch submitted a FOIA request to the State Department in October 2019, seeking the following records for the period between January 2019 and the date of the request:

> 1. Any and all records regarding, concerning, or related to the Department of State's use of the CrowdTangle social media monitoring program to monitor, compile, and/or analyze the social media activity of any U.S.-based journalist, reporter, or media commentator.  This request includes, but is not limited to, the following:
>
> - Any and all records identifying the social media accounts subject to any such monitoring or analysis.
> - Any and all reports or analyses generated via the CrowdTangle program.
> - Any and all related records of communication between any official, employee, or representative of the Department of State and any other individual or entity.
>
> 2. Any and all contracts, purchase agreements, or similar records documenting any payments made by the Department of State for access to or the use of the CrowdTangle program.

Compl. ¶ 5.  Judicial Watch requested that the scope of the State Department's search include "all unclassified and classified e-mail and record management systems utilized by" several individuals and entities, including former U.S. Ambassador to Ukraine Marie Yovanovitch, Deputy Assistant Secretary of State ("DAS") George Kent, the U.S. Embassy in Kyiv, the

Bureau of European and Eurasian Affairs ("EUR"), the Bureau of Global Public Affairs ("GPA"),[1] and the Office of the Legal Advisor ("L"). Id.

Judicial Watch filed this lawsuit in January 2020, alleging that the State Department had failed to make a final determination on the FOIA request within the statutory deadline. Id. at ¶ 8. The State Department then processed 100 responsive records, releasing five documents in full and 95 in part. First Decl. of Eric F. Stein ("First Stein Decl.") ¶¶ 7–9, ECF No. 14-3.

In February 2021, the State Department moved for summary judgment. Judicial Watch filed a cross-motion for summary judgment the following month. In their motion papers, the parties confine their dispute to withholdings in eight documents. See Pl. Opp'n at 3. Pursuant to an order of the Court, the State Department submitted unredacted versions of two of those documents for *in camera* inspection in July 2021. Both sides' summary judgment motions are now ripe for decision.

## II.   Legal Standard

In FOIA cases, an "agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" Prop. of the People, Inc. v. Office of Mgmt. & Budget, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting Competitive Enter. Inst. v. EPA, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).

---

[1] The FOIA request referred to the "Bureau of Public Affairs," but it appears that the State Department understood Judicial Watch to be referring to GPA. See Def. Mem. In Support of Mot. Summ. J. at 7, ECF No. 14-2 (discussing a responsive document "prepared by officials within the Bureau of Global Public Affairs").

In determining whether any withholdings were proper, the Court must construe FOIA's enumerated exemptions narrowly.  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002).  The government may satisfy its burden through agency declarations that "describe[] the justifications for withholding the information with specific detail" and "demonstrate[] that the information withheld logically falls within the claimed exemption." ACLU v. DOD, 628 F.3d 612, 619 (D.C. Cir. 2011).  "Such declarations are entitled to a presumption of good faith, and the court can award the agency summary judgment based solely on the information so provided."  Judicial Watch, Inc. v. CIA, 310 F. Supp. 3d 34, 41 (D.D.C. 2018).  But agency declarations will not support summary judgment if the plaintiff puts forth contrary evidence or demonstrates the agency's bad faith.  ACLU, 628 F.3d at 619.

Similarly, an agency may demonstrate that it released all reasonably segregated parts of otherwise exempt records by submitting an affidavit indicating that an agency official conducted a review of each document and determined that the documents did not contain segregable information.  Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002). While the agency may not rely on conclusory statements, Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260–61 (D.C. Cir. 1977), it is entitled to a presumption that it complied with its segregability obligation.  Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Finally, under the FOIA Improvement Act of 2016, an agency may withhold information only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" to FOIA or "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i).  "The foreseeable harm requirement imposes an independent and meaningful burden on agencies." Reporters Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 369 (D.C. Cir. 2021) (cleaned

up).  To carry this burden, an agency withholding documents under the deliberative process privilege must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  Id. at 370.

## III.  Analysis

Judicial Watch challenges the State Department's decision to withhold parts of eight documents responsive to its FOIA request.  Before analyzing each disputed withholding, the Court will address three global issues.

First and foremost, the Court disagrees with Judicial Watch's suggestion that records related to the State Department's use of CrowdTangle are ineligible for protection by the deliberative process privilege and cannot be withheld on that basis.

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 incorporates all privileges that would apply during discovery in ordinary litigation, including the deliberative process privilege.  Gellman v. DHS, No. 16-cv-635 (CRC), 2020 WL 1323896, at *11 (D.D.C. Mar. 20, 2020).

To be protected by the deliberative process privilege, a document must be both predecisional and deliberative.  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).  A document is predecisional if it was "generated before the adoption of an agency policy," and it is deliberative if it "reflects the give-and-take of the consultative process."  Id.  The agency can establish deliberativeness by showing "that the withheld record 'makes recommendations or expresses opinions on legal or policy matters.'"  Gellman, 2020 WL 1323896, at *11 (quoting Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).

Judicial Watch challenges broadly that the government's assertions of the deliberative process privilege in this case on the ground that the documents at issue relate to "[a] nakedly political effort to monitor a group of U.S. citizens and journalists investigating a matter that could cause potential embarrassment to certain government officials," not "a legitimate agency *policy*."  Pl. Opp'n at 9.  However, Judicial Watch cites no authority—and the Court is aware of none—for the proposition that predecisional and deliberative documents lose their privileged status if the conduct discussed in those documents is somehow illegitimate or unsavory.  On the contrary, the confidentiality of internal agency deliberations may be *most* important when the agency is considering actions that would be susceptible to intense criticism.  Knowing that their comments are privileged, agency personnel may be more willing to point out the faults of such proposals before the agency's decision is made.  See Coastal States Gas Corp., 617 F.2d at 866 (one purpose of deliberative process privilege is "to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism").  Accordingly, regardless of whether the State Department's use of CrowdTangle was "legitimate," Pl. Opp'n at 9, documents related to that issue are eligible for the protection of the deliberative process privilege—provided they are predecisional, deliberative, and capable of causing reasonably foreseeable harm if disclosed.

Second, the record contains an unrebutted attestation that the State Department "conducted a line-by-line review of all the documents from which information has been withheld and has released all reasonably segregable, non-exempt information," excluding information that would be meaningless without the surrounding exempt material.  First Stein Decl. ¶ 18.  This evidence satisfies the State Department's burden as to segregability, especially when combined

with the fact that the agency applied selective redactions instead of blanket withholdings.  See De Sousa v. CIA, 239 F. Supp. 3d 179, 203 (D.D.C. 2017) (agencies "met their segregability burdens by submitting Vaughn indexes, in combination with the attestations of their respective declarants that documents were reviewed 'on a line-by-line basis' and no further segregation would be possible"); Gellman, 2020 WL 1323896, at *8 n.10 (similar).  Therefore, the Court need not place each individual document under the microscope to determine whether it contains non-privileged material that the State Department could have separated from any information that was properly withheld.

Third, Judicial Watch requests that the Court review the eight disputed documents *in camera*.  Pl. Opp'n at 12.  In FOIA cases, *in camera* review is an option "available to the district court if the court believes it is needed to make a responsible de novo determination on the claims of exception."  Larson v. Dep't of State, 565 F.3d 857, 869–70 (D.C. Cir. 2009) (internal quotation marks omitted).  "If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents."  Id. (internal quotation marks omitted). Therefore, where the Court can readily conclude based on the State Department's affidavits that a document was properly redacted, the Court will uphold those redactions without reviewing the documents *in camera*.  However, as detailed below, the Court has inspected two documents *in camera* to aid its analysis.

Turning to the eight individual documents in question, the Court will uphold each assertion of the deliberative process privilege.  It is therefore unnecessary to reach the State

Department's alternative argument that the attorney-client privilege applies to some of the withheld information.

A.  Documents 1 and 2

To begin, the State Department partially withheld two email chains between EUR officials and attorney-advisers in L.  Second Decl. of Eric F. Stein ("Second Stein Decl.") Ex. A at 1–2, ECF No. 20-1.  According to a Vaughn index[2] attached to the State Department's reply in support of its summary judgment motion, both documents contain officials' discussion of the impact of legal provisions on the State Department's "potential use of particular social media analytics platforms, including CrowdTangle."  Id. at 1.  This unrebutted evidence establishes that the redacted parts of Documents 1 and 2 were integral to the "give-and-take" preceding the State Department's decision on its potential use of these platforms.  Coastal States Gas Corp., 617 F.2d at 866.  This material thus falls squarely within the deliberative process privilege.

The State Department has also shown that disclosure of both documents would cause reasonably foreseeable harm.  Although the State Department initially submitted a Vaughn index containing only generic statements about foreseeable harm, the agency later provided a second, more detailed Vaughn index.  See Second Stein Decl. Ex. A.  The revised Vaughn index explains that disclosure of the withheld parts of Documents 1 and 2 would "discourag[e] Department officials from reaching out to their legal counsel to discuss issues related to the Department's functions while also deterring Department attorneys from candidly discussing expressing [sic] their views on sensitive legal issues."  Id. at 2.  This explanation links the agency's prediction of harm to the specific category of deliberative material at issue—namely, discussions between

---

[2] See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

State Department attorneys and non-attorneys about policies that may raise "sensitive legal issues."  Id.  The D.C. Circuit recently sustained a similar withholding under the deliberative process privilege where the agency explained the foreseeable harm at a roughly equivalent level of detail.  See Machado Amadis v. U.S. Dep't of State, 971 F.3d 364, 370–71 (D.C. Cir. 2020) (State Department established foreseeable harm by stating that disclosure "would discourage line attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals" (cleaned up)); see also Reporters Comm., 3 F.4th at 371 (reaffirming that redactions in Machado Amadis were properly justified because "the government directly articulated a link between the specified harm and the specific information contained in the material withheld" (cleaned up)).

The record establishes that the State Department "reasonably concluded that disclosure" of the redacted parts of Documents 1 and 2 "would likely impair the candid discussion" of sensitive legal issues in the future.  See Reporters Comm., 3 F.4th at 372.  Therefore, this material was properly withheld.

B.  Document 3

Document 3 includes three emails between a GPA official and attorney-advisers in L. Second Stein Decl. Ex. A at 3.  The first two emails contain legal discussions similar to Documents 1 and 2.  The final email attaches a draft issue paper, which assesses the impact of the Privacy Act on the State Department's potential use of analytics platforms and provides "additional details about the Department's relationship with CrowdTangle."  Id.  The State Department "withheld the contents of all three emails."  Id.  The Court starts with the first two emails, before turning to the draft issue paper.

The Court does not doubt, nor does Judicial Watch genuinely dispute,[3] that the first two emails in Document 3 are predecisional and deliberative.  For purposes of the foreseeable-harm inquiry, the State Department explains:

> Without the comfort of knowing that their candid discussions on sensitive legal issues will remain private within the Department, State officials and attorney-advisers would foreseeably be discouraged from engaging in those important discussions in the first place, thus seriously harming the Department's internal deliberative processes.

Second Stein Decl. Ex. A at 3.  Like the agency's articulation of foreseeable harm regarding Documents 1 and 2, this language provides "a focused and concrete demonstration of why disclosure of the particular type of material at issue"—internal discussions of sensitive legal issues—"will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." Reporters Comm., 3 F.4th at 370.  The State Department's foreseeable-harm explanation for the first two emails of Document 3 largely echoes the one it used for Documents 1 and 2, but this similarity is not surprising, nor does it indicate that the agency has resorted to mere boilerplate. See Leopold v. U.S. Dep't of Justice, No. 19-2796 (JEB), 2021 WL 3128866, at *4 (D.D.C. July 23, 2021) ("[T]he mere recitation of similar reasoning in showing harm does not by itself render that reasoning 'boilerplate.'  If Defendant can specifically and successfully argue why a given reason applies to one category, the Court

_____

[3] Judicial Watch states that it "disputes that the information contained in the withheld records reflects the internal exchange of ideas and recommendations that occurred while government officials were formulating strategies for official action in connection with the State Department's use of CrowdTangle and other social media analytics platforms."  Pl. Resp. to Def. Statement of Material Facts ¶ 5, ECF No. 16.  However, Judicial Watch cites no evidence to support its position on this factual issue.  This bare denial is insufficient to raise a genuine dispute at the summary judgment stage.  See Jeffries v. Barr, 965 F.3d 843, 859 (D.C. Cir. 2020) ("A properly supported motion for summary judgment may not be opposed by mere allegation or denial" (cleaned up)).

will not require a completely different rationale for others.").  The contents of the first two emails in Document 3 were properly withheld.

The Court reaches the same conclusion on the draft issue paper.  To be sure, the mere fact this document is a draft does not automatically justify its withholding.  A "draft" document may be non-privileged if it is not "deliberative in nature," or if it has lost its predecisional character through adoption by the agency as a final product.  Arthur Andersen & Co. v. IRS, 679 F.2d 254, 257–58 (D.C. Cir. 1982).  Here, however, the record shows that the draft issue paper falls within the privilege.  The draft paper is predecisional because it "predates any final version of this guidance later prepared by Department officials."  Second Stein Decl. Ex. A at 3.  It is also deliberative in nature because in preparing the issue paper, the State Department was not merely describing "already-made and in-place policy choices," Reporters Comm., 3 F.4th at 367, but making forward-looking judgments about the legal framework that should guide the development of the agency's use of analytics technology.  This project is "an authoring exercise" of the type that the D.C. Circuit has "recognized as deliberative and editorial."  Id.

The State Department also asserts that disclosure of the draft issue paper would cause foreseeable harm by leading officials to "believe that every edit or comment they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between Department officials and curtailing creativity in the compilation and explanation of Department policy."  Second Stein Decl. Ex. A at 3.  This explanation describes the specific harm foreseen and connects it to the draft document at issue.  Moreover, the explanation rings true; "given the high-profile and sensitive nature of" the matters that allegedly precipitated the State Department's monitoring of Ukraine-related social media activity, it makes perfect sense that disclosure of predecisional legal and policy analysis in this area "would dampen the free

11

exchange of ideas within the agency."  Leopold, 2021 WL 3128866, at *4; see also Reporters

Comm., 3 F.4th at 372 ("unique sensitivity" of certain emails between high-level FBI officials

supported finding of foreseeable harm as to those emails).  The record here provides far more

than a "cookie-cutter" assertion that release of a draft document would be harmful simply

because it would "reveal the thought and decision-making processes of the [agency] and may not

reflect the agency's final decisions."  Reporters Comm., 3 F.4th at 371.

      The Court therefore finds that all withholdings in Document 3 were proper under the

deliberative process privilege.

      C.  Documents 4, 5, and 6

      The revised Vaughn index identifies Documents 4, 5, and 6 as "three different iterations

of the same email chain, which was circulated among various officials in EUR during March

2019."  Second Stein Decl. Ex. A at 4.  The parties dispute the State Department's partial

withholdings of six emails in the chain:  (1) an email from a Kyiv-based official to a U.S.-based

colleague requesting help in tracking specific "Ukraine-focused narratives developing across

certain social media platforms during the Ukraine desk's off-hours"; (2) a U.S.-based official's

email suggesting how colleagues in Kyiv might use certain monitoring tools to track news

stories; (3) a Kyiv-stationed Press Attaché's email clarifying the type of support sought; (4) an

email from DAS Kent in which he "provided additional color on the Ukraine-focused storylines

being tracked by the Kyiv desk, expressed his views on the potential importance of those

storylines both to Ukraine and the Department, and identified the social media platforms where

he believed those storylines were most likely to appear and develop"; (5) an EUR officer's email

to Ambassador Yovanovitch, from which the State Department redacted four bullet points that

contained suggestions for "avoiding employee burnout" and "possible solutions to the difficulties

expressed by the Kyiv desk through the use of modified staffing models, funding strategies, and various electronic applications and tools"; and (6) an email in which DAS Kent "expressed his views" on the utility of certain monitoring tools and on "how and why certain news stories had the potential to affect the Department's operations."  Second Stein Decl. Ex. A at 4–5.

The record makes clear that these emails, if released, would expose "the give-and-take of the consultative process" within the State Department.  Coastal States Gas Corp., 617 F.2d at 866.  The Court thus has no difficulty concluding that the withheld parts of these emails are predecisional and deliberative.

The State Department also avers that full disclosure of Documents 4, 5, and 6 "would foreseeably harm the deliberative processes used by Department officials when deciding what techniques and procedures they can and should use to track developing news stories, by discouraging officials from even engaging in those conversations" for fear of public exposure. Second Stein Decl. Ex. A at 5.  This statement "directly articulate[s]" the "link between the specified harm"—i.e., potential disengagement from internal conversations about tracking news stories—"and the specific information contained in the material withheld."  Reporters Comm., 3 F.4th at 371.  The State Department has thus satisfied the foreseeable-harm requirement and justified its partial withholding of Documents 4, 5, and 6 under the deliberative process privilege.

D.  Document 7

Next, the State Department partially withheld an email exchange between the Deputy Director of EUR's Public Diplomacy office and a Press Attaché, which contained additional information on the Kyiv desk's request for monitoring assistance and conflicting views on the merits of involving U.S.-based officers in the monitoring efforts.  Second Stein Decl. Ex. A at 6.

13

Because the redacted parts of these emails contain personal views, recommendations, and debates on potential State Department policies, the deliberative process privilege applies to them.

Whether the revised Vaughn index satisfies the foreseeable-harm requirement as to Document 7 is a much closer call. The agency states that disclosure of Document 7 in unredacted form would lead its personnel to "believe that every concern or recommendation they discuss with colleagues may be released to the public, thus curbing the candid exchange of ideas between Department officials and curtailing creativity in the formulation of Department policy." Second Stein Decl. Ex. A at 6. On one hand, this language is largely a recitation of "the generic rationale for the deliberative process privilege itself" and would apply equally to many other withholdings. Reporters Comm., 3 F.4th at 370. On the other hand, it does not require much imagination to surmise why the State Department would foresee harm from the disclosure of the specific information at issue. The targeted monitoring of social media was a sensitive matter, and the record shows that there were substantive differences of opinion within the agency about how to proceed. It would therefore seem reasonable for the State Department to "conclude[] that disclosure would likely impair the candid discussion of" monitoring techniques "and proposals for adjusting operations going forward." Id. at 372. Under Reporters Committee, the "context and purpose" of Document 7 would likely be sufficient to "make the foreseeability of harm manifest," even without a detailed written description of the foreseeable harm. Id.

Nevertheless, given the generic wording of the State Department's foreseeable-harm statement and the scarcity of controlling precedent on point, the Court exercised its discretion to review Document 7 *in camera* to help determine whether releasing the unredacted document would cause foreseeable harm. Having examined the document in its redacted and unredacted forms, the Court is confident that the State Department's redactions were justified. Although the

Court cannot describe the contents of the redacted material in specific detail (lest it defeat the purpose of the redactions), the information withheld is not trivial; it relates to substantive, sensitive policy matters that agency officials might reasonably hesitate to discuss if they expected their emails to be released under FOIA.  It is foreseeable that releasing this information would harm the candor of future intra-agency discussions about similar subject matter.  The Court will therefore uphold the agency's redactions to Document 7.

    E.  <u>Document 8</u>

Finally, the State Department partially withheld an email chain in which agency personnel discussed a CrowdTangle analytics report.  As relevant here, the agency partially withheld the second and fifth emails in the chain, both of which include recommendations from State Department officials.  Second Stein Decl. Ex. A at 7.[4]  Again, there is no genuine dispute that the redacted material in this email chain is predecisional and deliberative; the question for the Court is whether removing those redactions would cause foreseeable harm.

As with Document 7, the State Department provided a somewhat generic rationale for anticipating harm from the full release of Document 8, stating that disclosure of the second and fifth emails "would foreseeably harm the Department's deliberative processes by discouraging Department officials from developing creative policy solutions and sharing those recommendations among one another, lest those deliberations should later be made public."  <u>Id.</u>  Seeing this issue as another close call, the Court decided to review Document 8 *in camera* to assess the foreseeability of harm, just as it did for Document 7.

---

[4] The State Department also withheld the substance of an email containing legal analysis, which is a duplicate of an email included in Document 1.  The Court has already addressed and approved this withholding.

Based on this review, the Court will sustain the State Department's withholdings. Without delving into any protected details, the Court notes that the second and fifth emails are only lightly redacted.  These redactions are carefully tailored to conceal substantive, forward-looking recommendations and suggestions about the State Department's use of CrowdTangle or similar tools.  As already discussed, disclosure of such internal deliberations on this sensitive and controversial subject would cause foreseeable harm to similar deliberative processes going forward.

## IV.   Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment, and deny Plaintiff's Cross-Motion for Summary Judgment.  A separate Order shall accompany this memorandum opinion.

Date:  <u>August 17, 2021</u>

_____
CHRISTOPHER R. COOPER
United States District Judge

16